IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

---

**HORACE L. BOUNDS, JR., and EDNA JO BOUNDS**,

        Plaintiffs,

v.                                                                   No. CIV 09-580 BB/CG

**SAN LORENZO COMMUNITY DITCH ASSOCIATION, RAY HAMLETT in his individual capacity, TIMOTHY DONOVAN in his individual capacity, NICHOLAS BRUMMETT in his individual capacity, and WILLIAM LEE in his individual capacity,**

        Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court for consideration of two motions filed by Defendants: a motion to dismiss (Doc. 18) and a motion for stay (Doc. 20). After considering the submissions of the parties and the applicable law, the Court will deny both motions.

**Background**

Defendants have already attempted to have this case dismissed, in a prior motion to remand that was construed as a motion to dismiss and granted in part. The Court will not repeat the factual background contained in that prior opinion. Defendants now ask for dismissal of the only claim remaining in this case, Plaintiffs' First Amendment retaliation claim. Defendants have raised two distinct arguments in support of dismissal: first, that Defendant Ditch Association ("Association") is entitled to sovereign immunity from suit in this federal court, under the Eleventh Amendment; second, that the individual Defendants are entitled to qualified immunity. Defendants also ask the Court to stay this case if it is not dismissed. Each argument will be addressed in turn.

**Standard of Review**

In deciding a motion to dismiss, the Court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. *See Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008). The Court looks to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief. *See id.* A plaintiff does not have to provide detailed facts but the complaint must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). In addition, when qualified immunity is raised as a defense, the Court engages in a two-step inquiry. First, the Court must determine whether Plaintiff's allegations, if accepted as true, adequately allege a violation of a federal constitutional or statutory right. *See Albright v. Rodriguez*, 51 F.3d 1531, 1534-5 (10th Cir. 1995). If Plaintiff's allegations are sufficient, the Court must consider whether, at the time of occurrence, the right was clearly established. *Id.*

**Discussion**

**Eleventh Amendment:** In Defendants' opening brief, they argued summarily that the Association is entitled to Eleventh Amendment immunity because it is a political subdivision of the State of New Mexico, therefore qualifies as a state agency, and is specifically excepted from the waiver of immunity contained in the New Mexico Tort Claims Act ("TCA"), NMSA §§ 41-4-1 *et seq.* As Plaintiffs pointed out in response, however, these assertions do not accurately reflect the law of Eleventh Amendment immunity. The mere fact that the Association is denominated as a "political subdivision" of the State does not automatically entitle it to immunity under the Eleventh Amendment. In fact, generally the opposite is true – political subdivisions of a state, such as counties or municipalities, are not entitled to such immunity. *See Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007). Furthermore, the TCA has no impact at all on a § 1983

claim such as the one brought in this case; a state cannot immunize itself or its public employees from liability under § 1983.  *See Tiemann v. Tul-Center, Inc.*, 18 F.3d 851, 853 (10th Cir. 1994).

The true question in this case is whether the Association is an entity that should be considered an "arm of the state" for Eleventh Amendment purposes, or whether it is an independent political subdivision similar to a county, village, or other local governmental unit.  *See Steadfast, supra*.  Only if the former is true is the Association granted Eleventh Amendment immunity.  *Id.*  There are four primary factors to consider in deciding whether an entity constitutes an arm of the state.  First, state law must be examined to ascertain whether the entity is identified as an agency of the state or as something else; second, the degree of autonomy the entity possesses must be determined; third, the amount of state funding the entity receives must be analyzed, as well as the extent to which the entity has the ability to raise funds on its own behalf, for example through taxes or bonds; and finally, the entity's function, composition, and purpose must be examined to determine whether the entity is concerned primarily with local or state affairs.  *Id.*

Despite Defendants' arguments to the contrary, this four-part test leads inexorably to the conclusion that the Association is not an arm of the state, but is a local political subdivision that does not share in the state's Eleventh Amendment immunity.  As Defendants themselves note, acequia and community ditch associations such as the Association are identified as political subdivisions of the state, rather than as state agencies; the first factor therefore weighs against an arm-of-the-state finding.  NMSA § 73-3-28.  Also, the commissioners of the Association are elected rather than appointed or hired by the state; they have the authority to enter into contracts, and the Association has the right to sue and be sued on its own behalf.  NMSA §§ 73-2-11, 21.  Furthermore, there is no indication that the state exercises any degree of control over the day-to-day operations of the Association.  This level of autonomy is not typical of a state agency or other arm of the state.  *See, e.g., Elam Constr., Inc. v. Regional Transp. Dist.*, 129 F.3d 1343, 1346 (10th Cir. 1997) (entity denominated as political subdivision of the state, had the ability to sue and be sued, and operated

without state control over its day-to-day operations; entity not an arm of the state). The third factor, concerning the Association's finances, also weighs against an arm-of-the-state determination. There is no indication the Association receives a majority of its funding from the state, and it has statutory authority to raise necessary funds through assessments levied against its members, by borrowing money, or by accepting grants from the United States or other sources. *See, e.g.,* NMSA §§ 73-2-21(A)(3); 73-2-22; 73-2-26; and 73-2-28. Finally, the Association is solely concerned with a highly localized issue – the operations of a community ditch. All four of the relevant factors, therefore, weigh in favor of finding that the Association is a local political subdivision of the state rather than an arm of the state.[1] For that reason, the Association is not entitled to Eleventh Amendment immunity. As discussed above, its status under the TCA also does not immunize it from suit under § 1983; therefore, Defendants' sovereign-immunity claim lacks merit.

**Qualified Immunity:** As noted above, to decide whether the individual Defendants are entitled to qualified immunity, the Court engages in a two-step inquiry. First, the Court decides whether the allegations of Plaintiffs' complaint allege a violation of a federal right. *See Albright v. Rodriguez, supra*, 51 F.3d at 1534-5. Second, the Court decides whether that right was clearly established at the time of the occurrence. *Id.* As explained in the Court's previous opinion, Plaintiffs' complaint does allege the violation of a constitutional right. Plaintiffs have alleged that

---

[1] Defendants' arguments to the contrary, presented entirely in their reply brief, are not persuasive. For example, with respect to the "autonomy" issue, Defendants point to the fact that New Mexico statutes create an "acequia commission" which certainly appears to be an agency or arm of the state – it is "administratively attached" to the state department of finance and administration, its members are appointed by the governor, and its legal advisor and representative is the state attorney general's office. NMSA § 73-2-65. However, this acequia commission has no power to control the operations of local ditch associations, and its only role is to provide advice to various state and federal agencies, to facilitate communication between ditch associations and those agencies, and to review plans and legislation that might affect acequias or ditches. NMSA § 73-2-66. The acequia commission, therefore, bears little resemblance to the Association or other ditch associations. In fact, the clear differences between the nature and status of the acequia commission and local ditch associations only emphasize the fact that the Association, like other local ditch or acequia associations, is not an arm of the state.

Defendants retaliated against them because they exercised their First Amendment right of access to the courts, and as the Court has already explained this is sufficient to state a § 1983 claim. *See Shero v. City of Grove, Oklahoma*, 510 F.3d 1196, 1203 (10th Cir. 2007). There is no need, therefore, to repeat that analysis in this opinion; Plaintiffs have met the first prong of the qualified-immunity test.

The next part of the test requires an analysis of whether the right that was allegedly violated was clearly established at the time Defendants acted. A constitutional right is clearly established if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Hope v. Pelzer,* 536 U.S. 730, 739 (2002). This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Rather, the unlawfulness of the official's conduct must only be apparent in light of pre-existing law. *Id.* Under Tenth Circuit precedent, a plaintiff must generally show that there was a Supreme Court or Tenth Circuit opinion on point or that the proposition is supported by the weight of authority from other courts. *Armijo v. Wagon Mound Pub. Schs.,* 159 F.3d 1253, 1260 (10th Cir. 1998). If a plaintiff fails to show that a defendant's actions violated a clearly established right, he cannot recover. *Id.*

Defendants' central argument in support of their claim for qualified immunity is their contention that all of their actions arose out of discretionary powers conferred upon them pursuant to statute. They maintain they had statutory authority to impose an assessment upon Plaintiffs to pay for legal fees incurred in defending against Plaintiffs' prior lawsuits. They also maintain they had statutory authority to threaten to shut off Plaintiffs' access to water from the ditch, if Plaintiffs refused to pay the assessment. In sum, they argue that reasonable officials in their position would not have known that exercising their valid statutory authority could have constituted a violation of Plaintiffs' constitutional rights. As the Court already explained in its prior opinion, however, it does not matter whether Defendants had statutory authority to take the actions they did. The true issue

with respect to Plaintiffs' § 1983 claim is whether Defendants acted out of a desire to retaliate against Plaintiffs, rather than pursuant to the normal course of their duties as ditch commissioners. As the Court's prior opinion states, "it does not matter whether the assessment can be legally justified; if it was imposed in order to retaliate against Plaintiffs for their lawsuit, Plaintiffs can prevail on their § 1983 claim." *See, e.g., Perez v. Ellington*, 421 F.3d 1128, 1132 (10th Cir. 2005); *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 847 (10th Cir. 2005).[2]

The true issue for qualified-immunity purposes, therefore, is not whether a reasonable official would have thought he had statutory authority to take actions such as those allegedly taken by Defendants in this case. Instead, the crucial question is whether it was clearly established that Plaintiffs had a right to file a lawsuit against Defendants without being retaliated against for taking such action. In other words, should a reasonable government official have known that it is a violation of the First Amendment to take adverse action against an individual out of a desire to punish that individual for exercising his or her right to go to court? The answer to this question is apparent; a number of Tenth Circuit cases, as well as cases from other circuits, have established there is a First Amendment right of access to the courts, and no retaliation is permissible when that right is exercised. *See, e.g., Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (prison officials may not retaliate against an inmate because of the inmate's exercise of his right of access to the courts; this is true even if the action taken in retaliation would be otherwise permissible); *see also Gunter v. Morrison*, 497 F.3d 868, 874 (8th Cir. 2007) (refusal to promote public employee in retaliation for employee's prior suit against city would violate right of access to courts; this right was clearly established); *Carpinteria Valley Farms, Ltd. v. County of Santa Barbara*, 344 F.3d 822,

---

[2]The Court in no way intends to imply that Defendants' actions were indeed authorized by statute; as the Court also noted in the prior opinion, there is a question as to whether at least some of those actions were so authorized. The Court simply states, yet again, that even if there was statutory authority for Defendants' actions, that fact would not vitiate Plaintiffs' retaliation claim.

830 (9th Cir. 2003) (if county imposed land-use restrictions and regulatory delays in retaliation for plaintiff's exercise of right of access to courts, plaintiff's retaliation claim was ripe for litigation).

Even though there does not appear to be a case that has been decided based on facts exactly like those of this case, the contours of Plaintiffs' right to be free from retaliation were clearly established at the time of the events leading to this lawsuit. Defendants knew, or should have known, they were not allowed to retaliate against Plaintiffs as punishment for the litigation Plaintiffs initiated. The Court recognizes Defendants' position that no retaliation occurred, and they were simply carrying out their statutory duties as ditch association commissioners. That contention, however, is a factual issue that cannot be decided at the pleadings stage. Accepting Plaintiffs' allegations as true, the Court must also accept the allegation that Defendants' actions were motivated by a desire to retaliate. The individual Defendants' request for qualified immunity will therefore be denied at this point.

**Stay:** Defendants have filed a cursory request that this Court stay the case pending resolution of a state-court lawsuit Plaintiffs have filed. The only justification for such a stay advanced by Defendants, however, is their contention that "[d]isposition of the now-pending state-law claims could be determinative of the basis of Plaintiffs' § 1983 claim still pending before this Court." [Doc. 20] This one-sentence justification, however, falls far short of meeting Defendants' burden. In order to obtain a stay of a federal action due to the pendency of state-court proceedings, a party must establish not only that the state and federal proceedings are "parallel" proceedings, but also that exceptional circumstances exist justifying the stay. *See Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994). Defendants do not appear to have met either requirement.

Lawsuits are parallel if substantially the same parties litigate substantially the same issues in different forums. *Id.* In this case, the same parties are involved in both the federal-court case and the state-court action. However, the issues in each case appear to be different. As discussed above, the § 1983 lawsuit filed in this Court turns on the question of Defendants' motives for taking the

7

actions they did.  The state-court action, on the other hand, is directed at determining the legal validity of the assessments imposed on Plaintiffs by Defendants.  Thus, the state-court action will not resolve the main issue implicated in this federal-court case, and the actions are not parallel.

In addition, even if the two actions could be considered parallel, Defendants have not demonstrated the exceptional circumstances that must be present before this Court will abandon its unflagging responsibility to exercise jurisdiction over actions based on federal law, particularly civil-rights claims.  *See Clajon Prod. Corp. v. Petera*, 70 F.3d 1566, 1576 (10th Cir. 1995).  There are a number of factors a court must consider in determining whether such exceptional circumstances exist. *See Fox, supra*, 16 F.3d at 1082.  These factors include, but are not limited to, the following:  (1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction. *Id.*  Defendants have not attempted to address any of these factors, although their erroneous assertion that the state-court proceedings could be determinative of the § 1983 claims might be construed as addressing the third factor, avoiding piecemeal litigation.  While that factor might weigh in favor of a stay, the others do not; there is no property involved in either case, the federal forum is not inconvenient, and it was this Court, not the state court, which first obtained jurisdiction.  The Court therefore finds there are no exceptional circumstances that would justify entering a stay of this action.

### ORDER

Based on the foregoing memorandum opinion, it is hereby ORDERED that Defendants' motion to dismiss and motion for stay (Docs. 18, 20) be, and hereby are, DENIED.

Dated this 22$^{\text{d}}$ day of December, 2009.

BRUCE D. BLACK
United States District Judge